CARY, Respondent, vs. PREFERRED ACCIDENT INSURANCE
COMPANY OF NEW YORK, Appellant.

*January 9—January 30, 1906.*

*Accident insurance: Liability: Exemptions: Proximate cause: Injury
resulting from poison or infection: Bodily infirmity or disease.*

1. In an action on a policy insuring against the effects of bodily in-
jury caused solely by external, violent, and accidental means,
one exemption from liability contained in the policy was:
"This insurance does not cover any case of disability or death
whatever, except where the claimant shall furnish to the com-
pany direct and positive proof that such disability or death re-
sulted *proximately* and solely from accidental cause." It ap-
peared from the evidence that the assured fell and sustained an
injury to his leg which caused an abrasion of the skin, that
bacteria, causing blood poisoning, entered his system through
such abrasion, and that his death resulted therefrom. *Held:*

    (1) The term "proximately," employed in the contract, must
be understood to have been used in its common and accepted
meaning, as adopted and approved in the law under like condi-
tions and circumstances.

    (2) The jury were warranted in their conclusion that the
assured's death resulted proximately and solely from his acci-
dental fall.

2. Responsible causation, as applied in the law, is not dependent on
time, distance, or a mere succession of events.

3. A policy insuring against accidents, exempting the insurer from
any liability for any injury "resulting from any poison or in-
fection, or from anything accidentally or otherwise taken, ad-
ministered, absorbed, or inhaled," does not exempt the insurer
from liability when accidental abrasion of the skin was the
proximate cause of death, although bacterial poisoning inter-
vened.

4. In such case the policy further exempted from liability for death
"resulting either directly or indirectly, wholly or in part, from
bodily infirmity or disease of any kind." *Held,* that the exemp-
tion did not apply to bodily infirmity or disease the result of
accident, and, the facts justifying the conclusion that death re-
sulted from accidental injury, the insurer was liable within the
intent and meaning of this provision of the policy.

APPEAL from a judgment of the circuit court for Milwau-
kee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

This is an appeal from a judgment rendered upon a special verdict in favor of plaintiff for $11,694.64 and costs in an action upon a policy of accident insurance. The defendant insured Eugene Cary against the effects of bodily injury caused solely by external, violent, and accidental means, and undertook to pay the insured the sum of $25 per week for not exceeding fifty-two weeks for a total disability for that period. Different amounts were to be paid in the event of the loss of hands or eyes, etc., or in case of permanent disability; and if death resulted from such an injury within ninety days from the date of the injury the company agreed to pay the beneficiary under the policy the sum of $5,000. There were special provisions regarding injuries received on railroad trains and other trains and a number of exemptions from liability. The exemptions material of consideration on this appeal are given hereafter. On Wednesday, June 3, 1903, Eugene Cary, the insured, accidentally fell while on his way to the bathroom in his house, and sustained an abrasion of the skin on his right leg, just above the ankle. The accident occurred in going down a flight of three steps in the hallway between his bedroom and the bathroom. Immediately after the accident his wife dressed the wound, which was a little bloody, with some white cloth. This dressing was renewed daily for a week, except on Sunday, and on one occasion she applied vaseline to it. On Friday she noticed that the wound had changed somewhat in its appearance. It had become red in color. On the second Wednesday, one week after the accident and two days before his death, a physician first saw the wound, and he found that Mr. Cary was suffering from blood poisoning. Two days later, which was nine days after the accident, Mr. Cary died. On July 2, 1903, plaintiff gave notice of the claim, alleging that Mr. Cary, in "descending the steps leading to the bathroom, slipped and fell, injuring his right leg. Inflammation set in, owing to infection of the wound, which resulted in his death on June 12,

1903." On August 15, 1903, a *post-mortem* examination was made by physicians representing both the plaintiff and the defendant, and subsequently parts of the body were microscopically examined. Upon the trial of the action all the medical experts agreed that Mr. Cary died from the disease of septicæmia or blood poisoning, resulting from the introduction of bacteria into his body through this wound. Plaintiff avers that death resulted solely and proximately from the accidental fall, which produced the abrasion of the skin on the leg of the deceased. Defendant denies that death so resulted, and asserts that death resulted from causes under which the policy exempts it from liability, and claims that death resulted either from poison or infection or something accidentally or otherwise taken or absorbed, or that death resulted directly or indirectly, wholly or in part, from causes or conditions of bodily infirmity or disease. The provisions of the policy under which these exemptions are claimed are as follows:

"(1) This insurance does not cover . . . any case of disability or death whatever, except where the claimant shall furnish to the company direct and positive proof that such disability or death resulted proximately and solely from accidental causes; (2) nor injury, fatal or nonfatal, resulting from any poison or infection, or from anything accidentally or otherwise taken, administered, absorbed, or inhaled; (3) nor death . . . nor disability resulting either directly or indirectly, wholly or in part, from any of the following acts, causes, or conditions: . . . Bodily infirmity or disease of any kind."

The cause was submitted to a jury, which by special verdict found the following facts:

"(1) Did Eugene Cary, by a fall in or near his bathroom, sustain an injury to his right leg on June 3, 1903, causing an abrasion of the skin on said leg? *Answer.* Yes. (2) If you answer the first question 'Yes,' then answer this question: Did the bacteria causing septicæmia, or blood poisoning, enter into the system of Eugene Cary through such abrasion of the skin? *A.* Yes. (3) Did Eugene Cary at the time of his

death have a varicose ulcer on the upper part of the lower third of his right leg? *A.* No. (4) If you answer the question 'Yes,' then answer this question: Did the bacteria causing septicæmia, or blood poisoning, enter into the system of Eugene Cary through such varicose ulcer? *A.* [No answer.] (5) Did the death of Eugene Cary result proximately and solely from bodily injury caused by external, violent, and accidental means? *A.* Yes. (6) Was there any such diseased condition of either the kidneys, the liver, or the veins of the right leg of Eugene Cary as contributed to cause his death? *A.* No. (7) Was the immediate cause of the death of Eugene Cary infection from bacteria, producing the septicæmia aforesaid? *A.* Yes. (8) If the court should be of the opinion that the plaintiff is entitled to recover, at what sum do you assess her damages? *A.* (by the court by consent of counsel) $11,269.64; one year and five months' interest, six per cent., $425.00—$11,694.64."

The court refused to direct a verdict for defendant and also denied a motion for a new trial. This is an appeal from a judgment entered in favor of plaintiff upon the special verdict.

For the appellant there was a brief by *Van Dyke & Van Dyke,* attorneys, and *J. H. Roemer,* of counsel, and oral argument by *Mr. W. D. Van Dyke* and *Mr. Roemer.*

For the respondent there was a brief by *J. G. Donnelly* and *Timlin & Glicksman,* and oral argument by *Mr. Donnelly* and *Mr. W. H. Timlin.*

SIEBECKER, J. The defendant insured Eugene Cary for the term prescribed in the policy "against the effects of bodily injury caused solely by external, violent, and accidental means," in the sums and upon the conditions specified, and among other things agreed that, "if death shall result from such injury within ninety (90) days from the date thereof, the said company will pay the sum of $5,000" to the beneficiaries designated in the policy. There is no controversy but that Mr. Cary sustained an injury to his right leg, which

caused an abrasion of the skin, that bacteria, causing septicæmia or blood poisoning, entered his system through such abrasion, and that his death resulted therefrom; but there is a wide divergence between the claims of the parties as to what was the proximate cause of Mr. Cary's death under the established facts in the case. One provision of the contract is: "This insurance does not cover . . . any case of disability or death whatever, except where the claimant shall furnish to the company direct and positive proof that such disability or death resulted proximately and solely from accidental causes." The jury found specifically that Mr. Cary's death resulted "proximately and solely from bodily injury caused solely by external, violent, and accidental means." This finding is assailed upon the ground that it is impeached by the undisputed facts established by the evidence and the findings in the special verdict. These findings are, in effect, that bacteria, causing septicæmia or blood poisoning, entered Mr. Cary's system through the abrasion of the skin caused by Mr. Cary's accidental fall, and that his death was immediately caused by the septicæmia produced from the infection by such bacteria. This contention involves the inquiry as to what is meant under the law of insurance by the proximate cause as applied and used by the parties to the contract. The term "proximate cause" as here employed must be understood to have been used by the parties to the contract in its common and accepted meaning, as adopted and approved in the law under like conditions and circumstances. While attempts to define it are numerous and the phraseology employed in these attempts differs in the use of terms, they all aim to express a certain and definite meaning, which has been observed and applied on many occasions in the decisions of this court. The proximate relation of cause and effect, establishing legal responsibility, implies that the result produced had its inception in some responsible agency. The difficulty lies in ascertaining the agency to which the result is legally attributable. As

stated by this court, the proximate cause "is not necessarily
the immediate, near, or nearest cause, but the one that acts
first, whether immediate to the injury, or such injury be
reached by setting other causes in motion, each in order be-
ing started naturally by the one that precedes it, and alto-
gether constituting a complete chain or succession of events,
so united to each other by a close causal connection as to form
a natural whole, reaching from the first or producing cause
to the final result." *Deisenrieter v. Kraus-Merkel M. Co.* 97
.Wis. 279, 288, 72 N. W. 735. To determine it we must as-
-certain the cause which from its inception acts in a continu-
ous sequence and produces the injury as a natural and prob-
able result. It cannot be ascertained by any specific and
direct test, but must be determined as any ultimate fact is in-
ferred from evidentiary facts. If different agencies share in
producing a result, it then becomes necessary to determine
which is the responsible and efficient cause from which the
injury proceeds, by tracing it to the active agency from whose
inception the injury naturally follows, either directly or
through other causes set in action by it. *Deisenrieter v.
Kraus-Merkel M. Co., supra; Milwaukee & St. P. R. Co. v.
Kellogg,* 94 U. S. 469; 3 Joyce, Ins. ch. 60; 1 Cyc. 273.

The facts upon which the jury based their finding of the
special verdict that Mr. Cary's death resulted proximately
and solely from bodily injury caused solely by external, vio-
lent, and accidental means are, in effect, that he accidentally
fell and sustained an abrasion of the skin on his right leg,
which wound appeared somewhat red and inflamed on the
second day; that on the eighth day a physician first saw the
wound and then found Mr. Cary to be suffering from blood
poisoning; and that two days thereafter he died. The evi-
dence also shows that the abrasion of the skin furnished the
portal of entrance through which bacterial infection entered
Mr. Cary's system and caused the septicæmia which was the
immediate cause of his death. It is urged that unless the

evidence establishes the fact that the bacterial infection occurred at the time of the bodily injury by the fall, it cannot be found that his death was proximately and solely caused by the accident. As above stated, responsible causation, as applied in the law, is not dependent on time, distance, or a mere succession of events. If an injury is inflicted by an event, and it is found that it has set in motion all the succeeding agencies sharing in the result, then such event, as the efficient producing cause of the injury, is held to be the proximate cause of the injury. Under such circumstances the causal connection in the chain of events is shown by the dependence of each event for its action on the one preceding it, which thus form a continuous whole, with a proximate relationship established between the event which acted first through those naturally succeeding and the point of injury. Apply this test to the facts before us, and it is shown that no such bacterial infection would in all probability have occurred had there been no abrasion of the skin. This leads to the inevitable inference that the bacterial infection and the resultant septicæmia were in the natural course of events dependent upon and set in motion by the abrasion of the skin caused by the fall. The entry of bacteria into the system cannot be considered as an independent cause and as having intervened between the accidental fall and the death because of the fact that it was conditioned on the existence of the abrasion of the skin and was wholly incidental to and set in motion by it, thus making it one of the events in the chain of causation. We are satisfied that the jury were well warranted in their conclusion that Mr. Cary's death resulted proximately and solely from his accidental falling on the floor.

The policy exempted the defendant from any liability for any injury "resulting from any poison or infection, or from anything accidentally or otherwise taken, administered, absorbed, or inhaled." Exemption from liability is claimed

under this provision, under the jury's finding that "the imme-
diate cause of the death of Eugene Cary [was] infection from
bacteria producing the septicæmia." This provision of the
policy exempts defendant from liability in case Mr. Cary's
death *was caused by* poison or infection. Nothing further
need be said to refute the idea that bacterial infection proxi-
mately caused his death under the terms of the policy. This
provision of the policy is an exemption from liability only
where the resultant injury was proximately caused in the
manner specified in the provision. We have shown that the
infection which produced the septicæmia, which the jury
found was the "immediate cause" of death, cannot be held to
be its proximate cause, and therefore it does not come within
the terms of this exemption. Since the verdict negatives any
claim that death was produced by poison or from anything
"accidentally or otherwise taken, administered, absorbed, or
inhaled," we need not further consider this exception. In so
far as there was a conflict in the evidence on this question it
has been resolved in plaintiff's favor by the jury.

Another exemption agreed upon by the parties is that de-
fendant should not be liable for death "resulting, either di-
rectly or indirectly, wholly or in part, from . . . bodily in-
firmity or disease of any kind." The facts as found exclude
the idea that Mr. Cary was afflicted with any bodily infirmity
or disease other than septicæmia induced by bacterial infec-
tion entering through the abrasion of the skin. The exemp-
tion manifestly cannot apply to this bodily infirmity or dis-
ease, the result of the accident; for, if it were treated as within
the exemption, then it would be difficult to conceive of lia-
bility under any circumstances under insurance against ef-
fects of bodily injury caused solely by external, violent, and
accidental means. In the very nature of things injury result-
ing from such an accident must be accompanied by some bod-
ily infirmity in the general sense, and probably by disease in
some form and degree, which in some measure contribute to

the resulting disability or death. The utterance of the court in the recent case of *White v. Standard L. & Acc. Ins. Co.* (Minn.) 103 N. W. 735, speaking on this subject, aptly states the rule applicable to this condition of the policy:

"If, however, the injury be the cause of the infirmity or disease—if the disease results and springs from the injury— the company is liable, though both co-operate in causing death. The distinction made in this particular is found in that class of cases where the infirmity or disease existed in the insured at the time of injury, and, on the other hand, that class of cases where the disease was caused and brought about by the injury. And even in cases where the insured is afflicted at the time of the accident with some bodily disease, if the accidental injury be of such a nature as to cause death solely and independently of the disease, liability exists."

The facts of this case justify the conclusion that Mr. Cary's death resulted from the injury he accidentally received, and defendant is liable within the intent and meaning of the provision of the policy. 1 Cyc. 261; *Hall v. American M. Acc. Asso.* 86 Wis. 518, 57 N. W. 366; *Freeman v. Mercantile Mut. Acc. Asso.* 156 Mass. 351, 30 N. E. 1013; *Manufacturers' Acc. Ind. Co. v. Dorgan,* 58 Fed. 945, 7 C. C. A. 581; *Western Comm. Trav. Asso. v. Smith,* 85 Fed. 401, 29 C. C. A. 223; *U. S. Mut. Acc. Asso. v. Barry,* 131 U. S. 100, 9 Sup. Ct. 755. The court properly awarded judgment on the special verdict.

*By the Court.*—Judgment affirmed.