·duct in that respect, such as might be evidenced by the investment of capital here, with the maintenance of an office for the transaction of its business, and those incidental circumstances which attest the corporate intent to avail' it-·self of the privilege to carry on business. In short, it should appear, as it was intimated in the opinion in People ex rel. Armstrong v. Barker, 157 N. Y. 159, 51 N. E. 1043, that the corporation and its officers intended to establish a continuous business in the city of New York, and not one of a temporary char-·acter."

In City of Watertown v. Rodenbaugh, 112 App. Div. 723, 98 N. Y. Supp. 885, the ordinance, for the violation of which the defendant ·was convicted, provided that no person shall engage in the business ·of bill posting, bill distributing, sign advertising of any kind, or in distributing sample packages of merchandise, or in any other like ·method of advertising, without a license so to do granted by the com-·mon council. The court said:

"The ordinance assumes to prevent any unlicensed person from engaging in ·the business referred to, and it may well be questioned whether a person who, ·upon one occasion only, distributed sample packages under circumstances here ·disclosed, can be said to be engaged in the .business within the meaning of this ·ordinance."

While the plaintiff·in this instance was undoubtedly engaged in de-·tective work and undoubtedly the contract upon which he sued contem-·plated such work, there is no evidence in the case which showed that at any time in the city of New York he had been engaged in the busi-·ness of private detective, or had advertised such business. He had ·no office. He conducted no ·agency or bureau. He was employed ·upon this one occasion to do this one piece of work. The law did not ·prohibit the doing of the ·work, nor did it require the taking out of a ·license and the giving of a .bond under such circumstances.

As the case was disposed of solely upon the ground that a recovery ·was impossible by reason of the statutory provisions hereinbefore considered, it follows that the determination of the Appellate Term and ·the judgment of the Municipal Court should be reversed and a new ·trial granted, with ·costs to the appellant to abide the .event.

INGRAHAM, J., concurs.

---

(123 App. Div. 106.)

·GARVEY v. PHŒNIX PREFERRED ACCIDENT INS. CO. OF DETROIT, MICH.

(Supreme Court, Appellate Division, Fourth Department. January 8, 1908.)

1. INSURANCE—ACCIDENT POLICY—INFECTION.

An accident policy provided that in the event of injuries or disability resulting, directly or indirectly, accidentally or otherwise, from poison or infection, the insurer's liability was limited to one-tenth of the amount otherwise designated in the contract and to 26 weeks' disability. *Held*, that where plaintiff sustained an accidental injury to one of the bones of his foot, the original disability being within the terms of the policy, the fact that infection resulted did not bring the same within the terms of the limitation; the words, "injury or disability," being referable to the time ·of the accident.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1186.]

**2. SAME—CONSTRUCTION OF POLICY.**

An insurance policy is to be liberally construed in favor of insured; the conditions being strictly construed against those for whose benefit they are reserved.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 292-295.]

Appeal from Monroe County Court.

Action by John H. Garvey against the Phœnix Preferred Accident Insurance Company of Detroit, Mich. From a judgment for plaintiff in the sum of $240, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles S. Abbott and Frederick L. Dutcher, for appellant.

William Butler Crittenden, for respondent.

SPRING, J. On the 5th day of April, 1904, the Preferred Accident Association of Detroit, Mich., issued a policy to the plaintiff, insuring him against death or disability the result of accidental injury; and subsequently the appellant assumed the burden of this policy, with others. The plaintiff was a yard conductor in the employ of the New York Central Railroad Company, and the risk described in the policy issued to him was extra hazardous, and cost him yearly $36.72, payable quarterly in advance. By the policy, in case of his death as the result of accidental injury, the company agreed to pay $2,000; and in case of disability from the same cause $15 a week during the continuance of the disability. The policy contained this provision:

"In the event of injuries * * * or disability resulting directly or indirectly, accidentally or otherwise * * * from poison or infection [the company's liability was limited to one-tenth of the amount otherwise designated in the contract, and to twenty-six week's disability]."

The plaintiff on the 30th day of April, 1906, while walking up an incline leading to the platform of a freighthouse, slipped and fell, seriously injuring his left leg below the knee, and the disability continued until August 17th following. The physician who attended him described the injury, and its history as follows:

"I was called in to examine Mr. Garvey in regard to this accident on or about April 30th or May 1st last. I found a lacerated wound about the middle of the third tibia about two inches long. It was lacerated, as was also the periosteum, covering of the bone, caused by striking the leg against an old plank of some kind. The cause of the injury was the accident, and that resulted in the disability from about the 30th of April along to September 1st. I don't just remember the date. He was not able to work during that time. I should consider it a total disability. The cause of the total disability when I first examined it was not poison or infection. The results of the injury were the lacerations, of course, of the tissues and the covering of the bone, the periosteum; of course, a great deal of inflammation as bone injuries usually do. I was called and dressed the wound, and in about a week or ten days, possibly less, we began to get symptoms of septic or pyemic symptoms, which are about the same, very decided symptoms and swelling of the leg, and that continued for some little time, and the wound was a long time healing, as those wounds usually are."

Again, he testified that the blood poisoning was "the natural consequence of the injury"; that it was not an infectious one directly or

indirectly, and the disability was not "caused by poison or infection." In describing further the injury he said:

"The serious part was the condition of the bone, the abrasion of the bone. I would not say that, when a bone is injured, the infection is pretty hard to prevent. Sometimes. The injury to the bone was not of an infectious character. It was the infectious condition that give him the serious and prolonged disability. He would have got out sooner if it had not been for the infection. The prolonged disability of plaintiff was caused and produced by the infectious condition of the wound. I believe I so stated to the company in my letter. I don't remember."

He further testified that the injury to the bone caused the infectious condition, which occurred in about 10 days, and which was the natural and expected result of the accident.

The defendant claims that it is not liable because of the blood poisoning or infection. It is apparent that the condition described by the physician is the consequence reasonably to be expected from the injuries sustained by the plaintiff. The original disability was within the terms of the policy, and whatever naturally and in the ordinary course of events followed the injury was fairly within the scope of the policy. "The injuries or disability" referred to in the clause quoted relate to the time of the accident. They did not "result" from the poison or infection, if such existed, but the latter resulted from the injuries. The company was not expecting by this provision to be exempted from liability for what might occur in the progress toward recovering from the wound or what might normally arrest its improvement. Conditions which inevitably or ordinarily are the effect of a disability covered by the policy are also within its compass; otherwise, the contract is a sham. To illustrate the distinction in Bacon v. U. S. M. A. Association, 123 N. Y. 304, 25 N. E. 399, 9 L. R. A. 617, 20 Am. St. Rep. 748, the insurer was not liable for death or disability resulting from "bodily infirmities or disease," and only when the injury was "the proximate cause of the disability or death." The assured came in contact with a putrid or diseased animal, and contracted a malignant pustule which was an infectious malady, causing his death; and the court held no recovery could be had. The disease there was the disability, and there was no other injury and not even an abrasion of the skin was required to produce the infection. Authorities are not very helpful in construing the clause of this policy, for each case depends upon the particular provisions of the contract considered. Bailey v. Interstate Cas. Co., 8 App. Div. 127, 40 N. Y. Supp. 513, affirmed 158 N. Y. 723, 53 N. E. 1123, Martin v. Eq. Acc. Ass'n, 61 Hun. 467, 16 N. Y. Supp. 279, and Delaney v. Modern Accident Club, 121 Iowa, 528, 97 N. W. 91, 63 L. R. A. 603, bear somewhat upon the question. The general rule for guidance in the interpretation of contracts of this kind is stated in Paul v. Travelers' Ins. Co., 112 N. Y. 472, 479, 20 N. E. 347, 349, 3 L. R. A. 443, 8 Am. St. Rep. 758:

"Policies of insurance are to be liberally construed, and, as in all contracts, conditions are to be construed strictly against those for whose benefit they are reserved. * * * In their construction their words should be taken in that sense to which the apparent object and intention of the parties limit them,

and which is to be gathered from the surrounding clauses and from all the parts of the instrument."

From the jumble contained in the clause in its entirety in the policy before us from which the extract has been taken, I think the construction adopted is just and reasonable.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs.   All concur.