# NEW AMSTERDAM CASUALTY COMPANY *v.* MAYS.*

ACCIDENT OR DISABILITY INSURANCE; APPLICATION; WARRANTY; QUESTION FOR JURY; INSTRUCTIONS; WITNESSES; PHYSICIANS AND SURGEONS; DEATH BY ACCIDENT; BLOOD POISONING; PROXIMATE CAUSE.

1. A ruling of this court upon a former appeal (*Mays* v. *New Amsterdam Casualty Co.* 40 App. D. C. 249) in an action on an accident and disability insurance policy, that questions asked in a schedule in

---

*Insurance.*—For cases upon the question of liability on accident policy for sickness or death caused by blood poisoning, see note to *Cury* v. *Preferred Acci. Ins. Co.* 5 L.R.A.(N.S.) 926.

the application were not intended to elicit information concerning a rejection for life insurance, adhered to on this appeal.

2. The truth of a representation, by an applicant for accident and disability insurance, that he had not received medical or surgical attention during the preceding five years, except for a hand cut lasting four weeks, *held,* under the evidence upon that point, in an action on the policy, a question for the jury. (Following *Mays* v. *New Amsterdam Casualty Co. supra.*)

3. The question as to the truth of a representation, by an applicant for accident and disability insurance, that he had not received medical or surgical attention during the preceding five years, except for a hand cut lasting four weeks, is submitted to the jury, in an action on the policy, under proper instructions, as to the defendant, where the court, at its request, charges the jury that if they should find from the evidence that the insured made a false statement, or concealed the true situation in respect of any matter stated in the schedule of questions in the application, that was material to the risk, their verdict must be for defendant, and that if they find from the evidence that the insured had received medical or surgical attention during the five years immediately preceding the date of the policy, except for some slight indisposition or injury, such as a hand cut lasting four weeks, the verdict must be for defendant.

4. The testimony of a physician in behalf of defendant in an action on an accident and disability insurance policy, *held* inadmissible as within the prohibition of sec. 1073, D. C. Code (31 Stat. at L. 1358, chap. 854), following the same ruling, as to the same testimony, upon a prior appeal. *Mays* v. *New Amsterdam Casualty Co.* 40 App. D. C. 249.)

5. Death from blood poisoning which is solely the result of an injury is "death from bodily injuries which, independently of all other causes, are effected solely and exclusively by external, violent, and accidental means," within the terms of an accident and disability insurance policy so defining loss of life by accident.

6. Blood poisoning not caused, or contributed to, by any disease or bodily infirmity of an insured at the time of an injury, but resulting solely from the accident, is not a contributory cause of his death therefrom, within the meaning of a special indemnity clause in an accident and disability policy which provides that, in case loss by accident is caused or contributed to, wholly or partly, directly or indirectly, by blood poisoning, the liability of the insurer shall be one half of the amount of the ordinary accident indemnity specified for such loss.

7. It is for the jury, in an action on an accident and disability policy after the death of the insured from blood poisoning following an in-

jury, to determine whether he was suffering, at the time of his injury, from a disease which was a contributory cause of the blood poisoning, where the evidence is conflicting as to that question; and therefore it is proper for the court to decline to charge that the amount of the verdict cannot exceed one half the principal indemnity of the policy, under a special indemnity clause limiting the insurer's liability to that amount in case loss of life by accident is caused or contributed to, wholly or partly, directly or indirectly, by blood poisoning, since the blood poisoning, if solely the result of the insured's injury, did not contribute to his death within the meaning of such clause.

8. The defendant cannot, in an action on an accident and disability policy after the death of the insured from blood poisoning following an injury, complain of the refusal to charge that the amount of the verdict cannot exceed one half the principal indemnity of the policy, under a special indemnity clause limiting the insurer's liability to that amount in case loss of life by accident is caused or contributed to, wholly or partly, directly or indirectly, by blood poisoning, where no exception is reserved to the court's charge in submitting to the jury the question whether the blood poisoning was solely the result of the accident, and the court instructs the jury, at defendant's request, that if they find from the evidence that the insured's death was caused or contributed to, wholly or partly, directly or indirectly, by blood poisoning, their verdict, if for plaintiff, cannot exceed one half the capital sum of the policy, with interest.

No. 2710. Submitted December 11, 1914. Decided January 4, 1915.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia upon a verdict for the plaintiff in an action on an accident and disability policy of insurance. *Affirmed.*

The facts are stated in the opinion.

*Mr. Frederick D. McKenney, Mr. John S. Flannery* and *Mr. William Hitz* for the appellant.

*Mr. John C. Gittings, Mr. J. Morrill Chamberlin, Mr. D. S. Mackall,* and *Mr. James R. Caton* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a judgment upon verdict for Lucy D. W. Mays, the plaintiff, in the supreme court of the District, in an action on an accident and disability insurance policy. The plaintiff is the widow and beneficiary of the insured.

At a former trial the court, at the close of all the evidence, directed a verdict for the defendant on the ground that the failure of the insured, in answering a schedule of questions in his application for insurance, to mention the rejection of an application for life insurance, constituted a breach of warranty, and avoided the policy. Upon appeal to this court we ruled that the questions asked in the above-mentioned schedule were not intended to elicit information concerning a rejection for life insurance, and reversed and remanded the case. *Mays v. New Amsterdam Casualty Co.* 40 App. D. C. 249, 46 L.R.A. (N.S.) 1108. In the present appeal counsel again attempt to raise this question, and in justification refer to *Ætna L. Ins. Co. v. Moore,* 231 U. S. 543, 58 L. ed. 356, 34 Sup. Ct. Rep. 186; *Prudential Ins. Co. v. Moore,* 231 U. S. 560, 58 L. ed. 367, 34 Sup. Ct. Rep. 191, since decided. In those cases the insured had been asked whether any proposal or application *to insure his life* had been made to any company, association, or agent, for which insurance had not been granted, and also whether any physician had expressed an unfavorable opinion upon his life, *with reference to life insurance.* Those questions the insured answered in the negative, notwithstanding that an application for life insurance had been made, and that the medical examiner of the company had refused to pass him, telling him that he had heart disease. The difference between those cases and the present is too apparent to require further comment. We therefore adhere to our prior ruling.

Mr. Mays further stated, when he applied for insurance, that he had not received medical or surgical attention during the five years preceding, except in 1890, for hand cut lasting four weeks. At the former hearing it was insisted, as now, that the evidence warranted the court in ruling, as matter of

law, that this representation was not true, and hence constituted a breach of warranty. After reviewing the evidence upon this point, which did not differ materially from the evidence in the present record, we ruled that the question was for the jury, under proper instructions from the court. The present record shows that the court, at the request of the defendant, charged the jury that if they should find from the evidence "that the assured made a false statement, or concealed the true situation in respect of any matter stated in the schedule, that was material to the risk, their verdict must be for the defendant. * * * That if they find from the evidence that when the policy in suit was last renewed, on or about September 27, 1909, Mr. Mays was not in sound condition physically, or that any of his warranties or statements material to the risk and contained in the original policy were untrue at the time of the said last renewal thereof," their verdict must be for the defendant; "that if they find from the evidence that Mr. Mays had received medical or surgical attention *during the five years immediately preceding the date of the policy, namely September 27, 1906,* except for some slight indisposition or injury such as a hand cut about 1890, lasting four weeks, *then the verdict must be for the defendant.*" This instruction was as favorable to the defendant as the evidence warranted.

The policy contains the following "Special Indemnities" clause: "This policy does not exclude indemnity for loss by accident as herein provided, caused or contributed to, wholly or partly, directly or indirectly, by sunstroke, freezing, anesthetics, gas, lockjaw, septicemia, narcotics, poison, somnambulism, racing, shooting, intoxicants, asphyxiation, riot, polo playing, wrestling, strikes, steeple chasing, football playing, hydrophobia, riding to hounds, or by bite of animal; but in any such event the liability of the company shall be one half of the amount of the ordinary accident indemnity specified for such loss;" and under the head of "Definitions," loss of life by accident is "deemed to mean death from bodily injuries not intentionally inflicted by the assured, which independently of all other causes are effected solely and exclusively by external, vio-

lent, and accidental means, and which shall result in the death of the assured within ninety days of the event causing the injury." It is the contention of appellant that the death of Mr. Mays was caused or contributed to by septicemia, and hence that the recovery should have been limited to one half of the principal amount specified in the policy.

In *Western Commercial Asso.* v. *Smith,* 40 L.R.A. 653, 29 C. C. A. 223, 56 U. S. App. 393, 85 Fed. 401, the friction of a new shoe against one of the insured's feet produced an abrasion of the skin of one of his toes, which caused blood poisoning resulting in death. It was the contention of the insurance company that death was not produced "by bodily injuries effected by external, violent, and accidental means;" but the court, speaking through Judge Sanborn, ruled otherwise, saying: "If the deceased suffered an accident, but at the time he sustained it he was already suffering from a disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected by the disease or infirmity, but he died because the accident aggravated the disease, or the disease aggravated the effects of the accident, * * * the association was exempt from liability, because the death was caused partly by disease and partly by accident. If the death was caused by bodily injuries effected by external, violent, and accidental means alone, the association was liable to pay the promised indemnity. If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent, and accidental means which produced the bodily injury, the association was equally liable to pay the indemnity. In such a case the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death; and the death is attributable not to the disease, but to the *causa causans,* to the accident alone."

In *Garvey* v. *Phœnix Preferred Acci. Ins. Co.* 123 App. Div. 106, 108 N. Y. Supp. 186, it was ruled that a clause in

an accident insurance policy, that liability for injuries or disability resulting, directly or indirectly, from poison or infecton, is limited to one tenth of the amount otherwise recoverable, does not apply to a disability occasioned primarily by a bruised or lacerated leg caused by a fall, though prolonged by the infection or poisoning of the wound; that the injury did not "result" from poison or infection, but the infection resulted from the injury, and was a consequence reasonably to be expected.

In *Cary* v. *Preferred Acci. Ins. Co.* 127 Wis. 67, 5 L.R.A. (N.S.) 926, 115 Am. St. Rep. 997, 106 N. W. 1055, 7 Ann. Cas. 484, the policy exempted the company from liability from death "resulting either directly or indirectly, wholly or in part, from bodily infirmity or disease of any kind." The insured sustained an injury to his right leg, which caused an abrasion of the skin, and septicemia or blood poisoning followed and resulted in his death. It was ruled that the entry of bacteria into the system could not be considered as an independent cause, and as having intervened between the accidental fall and the death, "because of the fact that it was conditioned on the existence of the abrasion of the skin, and was wholly incidental to and set in motion by it, thus making it one of the events in the chain of causation."

In *Preferred Accident Ins. Co.* v. *Patterson,* 213 Fed. 595, the insured was injured while cranking his automobile, and death ensued. There was a question whether the death was not caused or contributed to by the physical condition of the insured at the time he was injured. The circuit court of appeals, through Judge McPherson, said: "The policy provides that recovery for a death can be had only when the insured dies from bodily injuries effected through accidental means, as a direct result of the accident, and when the death results solely from such accident, independently and exclusively of any and all other causes. Therefore, if disease existing at the time of the accident was one cause of the death, the plaintiff cannot recover. The jury was properly instructed to that effect, and the verdict therefore establishes that there was an accident, that the accident was the direct and the only cause of death, and that

the insured was not diseased at the time of the accident." The court then observed that, with the above facts established by sufficient evidence, the cases relied upon by the company ceased to be applicable, which observation is apposite here.

Applying the doctrine of the foregoing cases, which we think both reasonable and sound, to the present, if the septicemia or blood poison was solely the result of the injury to the leg, then the death was caused by bodily injury "effected solely and exclusively by external, violent, and accidental means," within the terms of the policy. The question for determination, therefore, was whether the septicemia was solely and exclusively the result of the accident. If so, it was not an intervening and contributing cause, but a mere condition resulting from the injury. But if, on the other hand, the deceased was afflicted with some disease or bodily infirmity which was a contributing cause of the septicemia, then the septicemia did not result solely from the accident, and hence, to some extent, was a contributing cause to the death, within the meaning of the "Special Indemnity" clause. The evidence was conflicting as to whether Mr. Mays, at the time he was injured, was suffering from pre-existing disease. He was fifty-four years old at his death, and had been a railroad conductor on the Southern Railroad twenty-five or thirty years. He was about 5 feet 9½ inches tall, and weighed nearly 200 pounds. On January 8, 1910, he injured his leg in getting on a street car in this city, the injury causing an abrasion of the skin. His wife applied home remedies, but on the 12th, at about 6 o'clock in the evening, he had a hard chill, and a little later in the night he became delirious. Drs. Powell and Snowden were called, who diagnosed Mr. May's condition as la grippe, with indications of pneumonia, and treated him accordingly. On January 15th, when the injury to the leg was called to the attention of Dr. Snowden, he directed all his attention to that. Dr. Vaughn was called in consultation, and found that Mr. Mays was suffering with septicemia and gangrene of the leg, and that he was past human help. The patient died on the morning of the 20th. Dr. Vaughn, testifying for the plaintiff, stated that the contused

wound found of Mr. Mays's leg "was simply a scratch or bruise by something that had broken the skin on the shin, an inch or half an inch long; this wound was not of a class or kind likely to result in death, but might have caused death if infected;" that "septicemia is blood poisoning, the presence of septic material in the blood; there are many forms of septicemia, *the most serious arising from infection due to germs getting into the blood through an open wound or other avenues.*" The doctor further testified that he perceived "no indication of the existence of diabetes in Mr. Mays, and of his own knowledge he did not know of his having at any time been afflicted with diabetes." He further testified that slight wounds of the character such as he saw on Mr. Mays's leg frequently develop seriously or fatally on persons afflicted with diabetes, when they would readily heal upon persons physically sound. In the proof of death Dr. Vaughn stated the nature of the illness of the deceased when the doctor first saw him as "septicemia from cellulitis and gangrene of the leg, resulting from traumatism and infection." Mrs. Mays testified that her husband's general condition of health previous to his injury was fine; that he never missed time from his work aside from a vacation trip which he usually took once a year; that several weeks before the injury resulting in his death he had mashed one of his thumbs in a Pullman car, which injury readily healed, and did not cause Mr. Mays to lay off from work. Dr. William M. Smith testified that he had known Mr. Mays for twenty-five years, and "had considered himself Mr. Mays's personal physician for ten years;" that he saw him frequently, and treated him a few weeks before his death (when Mr. Mays mashed his thumb); that Mr. Mays's general condition of health appeared to be good; that he "did not have the appearance of a diabetic, nor did he impress me as being ill with any disease of that sort. Never looked to witness as though he was suffering from any constitutional trouble."

For the defendant it was shown that the examination of Mr. Mays for life insurance something more than five years previously had indicated diabetes. Dr. Snowden stated that

in making out Mr. Mays's death certificate he gave the cause of death as diabetes; that when his attention was called to the wound on Mr. Mays's leg on the 15th of January, a week after the injury, he found it "inflamed, swollen, and red;" that he was immediately led to think the patient had diabetes; that he examined the urine, and found it heavily loaded with sugar; that he knew Mr. Mays had formerly been treated by a Dr. O'Brien; that he was in Dr. O'Brien's office upon one occasion when Mr. Mays came in and left a sample of urine for examination, which Dr. O'Brien examined in the presence of witness, "the examination showing sugar in the urine and a diabetic condition." Under cross-examination he admitted that he overheard no conversation between Mr. Mays and Dr. O'Brien, "except as would occur among friends,—nothing to do with medicine;" that "Mr. Mays had said nothing about whose specimen it was or what it was when he left." He further admitted that when he first saw Mr. Mays in his last illness he saw no evidence of diabetes, and thought he was suffering from grippe; that when his attention was first called to Mr. Mays's leg "there was septicemia, and at that time did not think anything about diabetes; not until after he saw gangrene. *Does not know when diabetes first set in.*" In the affidavit to the company which this witness had previously made, the following questions and answers appear:

Question No. 14. What was the nature of the illness of the deceased when you first saw him?

Answer. Cellulitis of right leg.

15. During the entire period of the last illness of the deceased, what was its character and extent?

A. Cellulitis followed by gangrene.

16. What, if any, external marks, contusions, and wounds of recent origin did you find on the body of the deceased?

A. Wound of right leg.

19. What was the predisposing cause of the death of the deceased?

A. Injury.

20. What was the inciting cause of the death of the deceased?

A. Gangrene and exhaustion.

21. What was the nature, duration, and severity of the last illness of the deceased previous to the one from which he died.

A. None.

23. What other physicians within your knowledge have treated the deceased, and what are their addresses?

A. Unknown.

29. What was the age, height, and weight of the deceased at the time of his death?

A. Fifty-six years; 5 feet 9 inches; 200 pounds.

33. Prior to his last illness, had the deceased lost hand or foot or any part thereof? Was there any impairment of sight or hearing? Had he varicose veins, hernia, or any mental or bodily disease, disorder, or deformity?

A. No.

34. Was the deceased in sound health just prior to his last illness?

A. As far as I know.


At the former trial Dr. O'Brien gave certain testimony which, after careful consideration, we ruled to be inadmissible as within the prohibition of sec. 1073 of the Code [31 Stat. at L. 1358, chap. 854]. Notwithstanding that ruling, counsel for the defendant, over the objection of the plaintiff, introduced the same testimony at the second trial. The testimony was as inadmissible in the second trial as in the first, and will not be considered here.

We think it clearly apparent, from this brief analysis of the evidence, that it was a question for the jury whether Mr. Mays, at the time of his injury, was suffering from diabetes; that is to say, whether the blood poisoning was solely the result of the accident. The court therefore properly declined to instruct the jury that the amount of their verdict could not exceed one half the principal indemnity of the policy. To the court's charge in submitting this question to the jury no excep-

tion was reserved. However, the court granted the following prayer for the defendant: "The jury is instructed that if they find from the evidence that Mr. Mays's death was caused, or contributed to, wholly or partly, directly or indirectly, by septicemia, then if their verdict is for the plaintiff, the amount thereof cannot exceed one half the capital sum of the policy, with legal interest thereon."

The judgment must be affirmed, with costs.     *Affirmed.*