BOWEN, Respondent, vs. INTER-STATE BUSINESS MEN'S ACCIDENT ASSOCIATION, Appellant.

*November 14—December 11, 1923.*

*Insurance: Accident policy: Disease concurring with accident to cause death: Limitation of liability: Construction of contract: Conflict of laws: Form of policy: What law governs.*

1. Under an accident policy providing that if death resulted from an accidental injury, independent of all other causes, the beneficiary was entitled to $5,000, but if the injury did not at once produce death and thereafter disease occurred because of the injury, and death was occasioned by the disease alone or by the disease concurring with the injury, liability was limited to $500, where a scratch on insured's heel was not efficient at once to produce death but disease resulting therefrom concurred with the accident and death resulted, recovery was limited to $500.  p. 228.

2. While in cases of ambiguity or doubt insurance policies are to be construed most strongly against the insurer, this does not mean that the language employed by the parties in stating the terms of their contract is to be wholly ignored.    p. 228.

3. Notwithstanding a clause in an accident insurance policy issued in Iowa by an Iowa corporation to a resident of that state that the certificate should lapse on the 1st day of January, April, July, and October of each year if assessments or dues were unpaid, where insured moved into Wisconsin and there had been no forfeiture of the policy for nonpayment of dues, the certificate remained an Iowa contract and was not subject to sub. 2, sec. 1960, Stats. 1921, requiring exceptions in the policy to be printed with the same prominence as the benefits, and reductions of the benefits with greater prominence, especially in view of sub. 9, providing that policies issued in violation of the act shall be valid but shall be construed as provided in the act.    p. 229.

4. The provisions of sub. 2, sec. 1960, Stats., relate to the form of the policy; and the form of a contract is to be determined by the law of the place of contract rather than by the law of the forum.    p. 230.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge.    *Reversed.*

Death loss under accident policy.    It appears that the defendant is a mutual benefit association of Iowa, engaged in the business of insuring its members upon a mutual or assessment plan against loss of life, limb, or sight by accidental means; that on the 15th day of May, 1913, the decedent, Ben Bowen, was received into the association as a member, and on May 19, 1913, the defendant delivered to Bowen its policy of accident insurance in writing, said Bowen being at that time a resident of the state of Iowa; that Bowen during his lifetime fully complied with all of the requirements of the association; that the policy was renewed from year to year, and in 1916 Bowen moved to the city of Milwaukee, in the state of Wisconsin, where he lived at the time of his death; that on the 15th day of February, 1920, the decedent, Bowen, received personal injuries through ex-

ternal, violent, and accidental means, to wit, a scratch on his heel. The decedent retired on Sunday evening, February 15, 1920, and before retiring took a bath. When he awoke the following morning there was a scratch on his heel and his heel was bleeding, but he did not know how the injury arose but supposed he scratched himself with his toe nail. The skin was torn away, the scratch being about a quarter of an inch long. Nothing was done in respect to dressing the injury until about three days after the occurrence of the injury, when his wife made an application of a lysol solution and continued to do so until the following Saturday. At the time when she first dressed it the scratch had the appearance of a blister. The decedent had worn his shoe from Monday until Wednesday. On the Saturday following the dressing referred to, the decedent went to Washington, returning on the following Thursday. On the morning after his return the decedent consulted a physician, who dressed the heel at his office. The decedent continued at his work until Saturday of that week, when he came home with chills and a temperature of 103 degrees. On February 29th he had some fever, tenderness in the muscle of the calf of the right leg, and about that time developed tonsilitis. A few days later the patient developed pneumonia and from that time became rapidly worse. The swelling in the calf of the leg extended above the knee and finally up to the body. The femoral glands in that leg were swollen. The original wound in the meantime had apparently healed. A diagnosis of streptococcic infection was made. Bowen died on the 11th day of March, 1920. There was a judgment in favor of the plaintiff for the full amount of the death loss, $5,000, and from that judgment the defendant appeals.

For the appellant there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Emmet Horan, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Horan.*

For the respondent there was a brief by *Houghton, Neelen & Houghton* of Milwaukee, and oral argument by *Albert B. Houghton.*

Rosenberry, J.  The questions raised in this case are almost entirely questions of law and relate to the construction of the policy issued by the defendant to the decedent, Bowen.  The provisions of the policy material here are as follows:

"*Inter-State Business Men's Accident Association* of Des Moines, Iowa, . . . does hereby accept Ben Bowen of Sioux City and state of Iowa as a member in this association, and does agree, subject only to the terms, conditions, and limitations contained in this certificate, . . . to pay unto the member, or to the beneficiary or beneficiaries last nominated in writing by the member, in case of the death of the member, . . . the sums hereinafter specified, for loss of life, . . . on account of bodily injuries sustained by the member . . . effected directly and independently of any other contributing, concurring, or intervening cause, by external, violent, and accidental means."

### "Indemnity.

### "*II. Dismemberment, Loss of sight, Death.*

"C. *Death*—If, as a result of such injury, independently of all other causes, intervening, contributing, or concurring, the death of the member shall occur within ninety days from the date thereof, the association shall pay the sum of five thousand dollars ($5,000), which shall be in full and complete satisfaction of every claim against it, including any claim for disability.

### "*III. Special Limited Benefits and Indemnities.*

"A. *Disease or infection*—If such injury shall not of itself be efficient at once to produce total disability or death, but solely on account thereof, disease shall occur, either by reason of infection or otherwise, and total disability or death shall be occasioned by the disease alone, or by the disease concurring with the injury, the liability of the association shall be limited to five hundred dollars ($500)."

The defendant contends that under the provisions of subdivision III, Special Limited Benefits and Indemnities, the plaintiff is entitled to but $500, for the reason that the injury was not of itself efficient at once to produce total disability or death, and that the evidence clearly establishes that death occurred by reason of infection, and that at least the disease resulting from the infection concurred with the injury in producing death.

It is the contention of the plaintiff that the rule of proximate cause applies to this case and that it is therefore ruled by *Cary v. Preferred Acc. Ins. Co.* 127 Wis. 67, 106 N. W. 1055, and *French v. Fidelity & C. Co.* 135 Wis. 259, 115 N. W. 869. It is also the contention of the plaintiff that if the policy be construed as it is claimed by the defendant it should be, in no case under the policy could a beneficiary recover more than $500, because there is in all cases of accidental death not immediate, more or less disease which concurs with the injury to produce death.

Under the rule laid down in *Cary v. Preferred Acc. Ins. Co.* 127 Wis. 67, 106 N. W. 1055, if the policy under consideration did not contain subdivision III, it could not fairly be contended that the loss was not covered by the provisions of subdivision II, for the reason that the proximate cause of death in this case is the injury sustained by the decedent, operating independently of all other causes.

Subdivision III is, however, in the nature of an exception to the more general provisions of subdivision II, and when read together the policy provides that a death resulting from an accidental injury such as is described in the policy shall, if it be efficient to at once produce total disability or death, entitle the beneficiary to compensation in the sum of $5,000. If, however, the accidental injury is not efficient to at once produce total disability or death and thereafter disease shall occur solely by reason of the injury and death shall be occasioned by the disease alone or by the disease concurring with the injury, the compensation to the beneficiary shall be $500.

The plain intent of the parties as expressed in the policy cannot be subverted by a legalistic argument based upon the importation of the meaning of "proximate" and "concurring" cause as those terms are used in negligence law. If such an argument be followed to its logical conclusion, then paragraph C has no meaning whatever. While in cases of ambiguity or doubt insurance policies are, under the general rule of law, to be construed most strongly against the insurer, this cannot be held to mean that the language employed by the parties in stating the terms of their contract is to be wholly ignored. Under the argument advanced here by plaintiff there can·be no such thing as disease concurring as a cause. It is argued that the disease, in order to concur, must be one already existent at the time the accidental injury occurs, but under the terms of this policy the disease must be one which occurs solely on account of the injury, so there could never upon that basis be a concurring disease if the contention of the plaintiff is to be upheld in its entirety. The language of the insurance policies in *Cary v. Preferred Acc. Ins. Co.* and *French v. Fidelity & C. Co., supra,* is quite different than the language of this policy. The language employed here is quite evidently an attempt on the part of the insurer to limit its liability so as to meet the situation created by the decision in *Cary v. Preferred Acc. Ins. Co.* and other cases. Under the undisputed facts in this case the accidental injury was not efficient at once to produce total disability or death. The disease occurred solely on account of the accidental injury, and it must be conceded that the disease alone, or the disease concurring with the injury, resulted in death. The facts of this case bring it clearly within the exception of subdivision III of the policy and the recovery should therefore have been limited to $500.·

It is contended by the plaintiff that the provisions of subdivision III are not available to the defendant in this action

for the reason that the policy was not printed in compliance with sub. 2 of sec. 1960, Stats., which provides:

"No such policy shall be so issued or delivered . . . unless the exceptions of the policy be printed with the same prominence as the benefits to which they apply, provided, however, that any portion of such policy which purports, by reason of the circumstances under which a loss is incurred, to reduce any indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, *shall be printed in bold-face type and with greater prominence than any other portion of the text of the policy."*

It is claimed that the policy in question does not comply with that part of the subdivision underscored. It does not, and there was no attempt made to comply with it. As stated, the defendant is an Iowa corporation, and at the time the policy was issued and delivered the insured was a resident of the state of Iowa. It was therefore an Iowa contract. It is contended, however, that, the policy having been renewed by a continued payment of the premiums since the insured removed to Wisconsin in 1916, it is now a Wisconsin contract and covered by Wisconsin law. The policy contained the following agreement:

"This certificate and the membership thereby created shall automatically lapse and terminate at 6 o'clock p. m., standard time, at the place of the member's residence, on the first day of each January, April, July, and October hereafter occurring, if at such time there be unpaid any assessment or call for dues of which the member shall have been given due notice as provided in paragraph 15 hereof."

The plaintiff contends that a renewal or remaking of the policy occurred each January, April, July, and October. It is our opinion that the clause cannot be so construed. It is not contended that there was any forfeiture of the policy or that the paragraph quoted ever took effect, as the pre-

miums were paid within the time required by the terms of the policy. The contract was an Iowa contract when it was issued and delivered and it has continued to be an Iowa contract. In any event the provisions of our statute relate to the form of the policy, and the form of a contract is to be determined by the law of the place of contract rather than by the law of the forum. No question of public policy is involved. While the law of the state of Wisconsin requires accident and health policies to be so printed as to make prominent those provisions which limit the loss where death occurs under particular circumstances, sub. 9, sec. 1960, provides: "A policy issued in violation of this act shall be held valid but shall be construed as provided in this act;" clearly indicating that the requirements of the statute relate to form, and embody no intimation even that the failure of the insurer to perform the affirmative act required by the statute and the issuance of a policy not complying with its provisions are injurious to the public; otherwise the statute would not have provided that a contract issued in violation of its terms should be valid.

It appears in the record that the sum of $500 was tendered by the defendant to the plaintiff in the form of a draft; that that instrument is retained by the plaintiff, there being a stipulation that its retention shall not in any way affect the rights of the parties upon this appeal, but some satisfactory adjustment should be made in the matter. For that reason we are of the opinion that the judgment should be reversed, and the cause remanded for further proceedings according to law, rather than modified and affirmed.

*By the Court.*—It is so ordered.