[No. 16366. Department One. September 8, 1921.]

## J. ETHEL RORABAUGH, *Respondent*, v. GREAT EASTERN CASUALTY COMPANY, *Appellant*.[1]

APPEAL (454)—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE OTHERWISE ESTABLISHED. The admission of hearsay evidence is not prejudicial error where it is addressed to matter already properly put in evidence.

SAME (123)—PRESERVATION OF GROUNDS—OBJECTIONS TO EVIDENCE. The improper admission of testimony cannot be urged as error on appeal where it was not objected to at the time, nor motion to strike interposed.

INSURANCE (185)—ACCIDENT INSURANCE—CAUSE OF DEATH—EVIDENCE—SUFFICIENCY. The direct cause of death, in an action on an accident insurance policy, was properly a question for the jury under evidence showing death was caused by blood poisoning which resulted from a cut on the finger, the cutting and the inoculation being simultaneous.

SAME (128)—ACCIDENT INSURANCE—DEATH OF INSURED—"EXTERNAL, VIOLENT AND ACCIDENTAL MEANS"—CONSTRUCTION OF POLICY. Where an accident policy insured against all the effects of bodily injury caused directly, solely and independently of all other causes by external, violent and accidental means, the beneficiary was entitled to recover the full indemnity for death, which was due to blood poisoning resulting from an accidental cut, though another provision of the policy limited liability to one month's indemnity in case of death from blood poisoning; since the cutting of insured's finger, inducing blood poisoning, was the direct and external means whereby death resulted.

SAME (127)—ACCIDENT INSURANCE—CLASSIFICATION OF RISK. Under a provision of an accident policy insuring against bodily injury resulting in continuous disability from the date of the accident, it is not contemplated that there must be a disability from the very moment of injury; hence, where the insured became sick with blood poisoning within twelve hours after cutting his finger, and on the third day after the injury took to his bed, which he never left, the injury was one coming within the "continuous disability" clause.

Appeal from a judgment of the superior court for King county, Hall, J., entered November 3, 1920, upon

[1] Reported in 200 Pac. 587.

the verdict of a jury rendered in favor of the plaintiff, in an action on an indemnity policy. Affirmed.

*Roberts & Skeel* and *J. J. Geary*, for appellant.

*Jones, Riddell & Brackett*, for respondent.

BRIDGES, J.—This action was for recovery upon an accident and sickness indemnity policy, issued by the defendant to Clyde Roy Rorabaugh, the plaintiff being the beneficiary therein named. The facts are not greatly in dispute, and are as follows: The insured was a practicing physician and surgeon in the city of Seattle. On the 5th day of April, 1919, he performed a surgical operation on one of his patients. On the afternoon of the 6th he examined and dressed the wound resulting from the operation. Within a very few hours thereafter, while moving an old and rusty bed spring, he slightly cut one of the fingers of his right hand by coming in contact with the end of one of the wires. During the following day, to wit, the 7th, he complained of not being well and of having considerable pain in his right arm. His condition continued to grow worse until on the 9th he was required to take to his bed, where he remained until his death, about a week afterwards. He died of septicemia, or blood poisoning. Prior to the cutting or scratching of his finger, he was in the best of health. The testimony of the experts and others was strongly to the effect that the inoculation of his finger with the germs which caused the blood poisoning was coincident with the cutting of the finger, and the jury returned a special verdict so finding. It also returned a general verdict for the plaintiff in the sum of $1,560, being the amount sued for. In its answer the defendant tendered the sum of $120 in full of its liability. It has appealed from the judgment entered on the verdict.

The matter first to be discussed is concerning the introduction of certain testimony. Complaint is made that one witness was allowed to testify that "I asked him (the insured) what was the trouble, and he held up his finger and said, 'That scratch I got on that old spring'." We need not discuss this point further than to say that, in no event, could the defendant have been prejudiced by the receipt of this testimony, because all the testimony in the case shows that he was sick and that he had received the scratch mentioned.

Complaint is made that another witness was permitted to testify that the deceased said, "there is a bunch under my arm as big as an egg, and it is all swelled, etc." This objection may be disposed of for the reasons above given.

Error is claimed concerning the admission of portions of the testimony of Dr. Rickards. The appellant did not object to any questions which brought forth the testimony of which complaint is made, nor did it move to strike such testimony. The necessary result is that it is in no position to now complain.

The appellant also contends that there was not sufficient testimony concerning the cause of the death of the insured to justify the case being sent to the jury. We are unable to see upon what ground this contention can stand. A reading of the testimony shows that a number of witnesses testified that the immediate cause of death was blood poisoning, and the immediate cause of the blood poisoning was the cut on the finger, and that the cutting of the finger and its inoculation were simultaneous. Under the evidence, the direct cause of death (within the terms of the policy) was the injury to the finger. *Day v. Great Eastern Casualty Co.,* 104 Wash. 575, 177 Pac. 650; *Ballagh v. Interstate Business Men's Acc. Ass'n,* 176 Iowa 110, 155 N. W.

241; *Omburg v. United States Acc. Ass'n,* 101 Ky. 303, 40 S. W. 909, 72 Am. St. 413; *Western Commercial Trav. Ass'n v. Smith,* 85 Fed. 401; *Cary v. Preferred Acc. Ins. Co.,* 127 Wis. 67, 106 N. W. 1055, 115 Am. St. 997, 5 L. R. A. (N. S.) 926; *Freeman v. Mercantile Mut. Acc. Ass'n,* 156 Mass. 351, 30 N. E. 1013; *Thornton v. Travelers Ins. Co.,* 116 Ga. 121, 42 S. E. 287; *Garvey v. Phoenix Preferred Acc. Ins. Co.,* 123 App. Div. 106, 108 N. Y. Supp. 186.

The more important contention of the appellant is that, if it be conceded that the insured's death resulted exactly as respondent contends, still, under the terms of the policy, she is not entitled to recover any amount in excess of the amount tendered, to wit, $120. This argument requires a somewhat careful analysis of the policy. Its first clause states that it is an "accident and sickness policy, providing indemnity for loss of life, limb, limbs, sight or time by accidental means, and for loss of time by sickness—to the extent herein provided." The policy then proceeds to state that it insures

"Clyde Roy Rorabaugh, by occupation physician and surgeon, subject to all the agreements and limitations hereinafter contained . . . against all the effects of bodily injury, caused directly, solely and independently of all other causes by external, violent and accidental means, which bodily injuries or their effects shall not be caused wholly or in part, directly or indirectly, by any disease, defect or infirmity, and which shall from the date of the accident result in continuous disability; and also against the effects of sickness, as follows . . . ."

The policy is thereafter divided into two main heads as follows: "Accident Indemnities" and "Sickness Indemnities." Section 1, under "Accident Indemnities" provides that "if any loss specified in this section shall result solely and exclusively from such

injury within three months from the date of the accident, the company shall be liable only for such loss, and will pay for loss of life $1,200,'' and shall pay certain stated sums for other designated losses, such as the loss of both hands or both feet, etc. Section 2 is also under the same heading of ''Accident Indemnities'' and provides in part that

''If such injury shall not result in any of the losses above specified, but shall from the date of the accident disable and prevent the insured from performing every duty pertaining to any and every kind of business or occupation and be regularly attended by a licensed physician, the company will pay for the period of such total disability, not exceeding thirty-six consecutive months, indemnity at the rate per month of $120.''

Section 4, under the heading of ''Accident Indemnities,'' provides for certain accumulations which, under the facts of this case, would raise the amount entitled to be recovered by respondent, if her theory of the case be adopted, from $1,200 to $1,560, the amount sued for. If there were nothing else in the policy pertinent to this case, it is perfectly clear that the respondent was entitled to recover the full amount sued for and that her judgment should be affirmed, because the testimony clearly shows that the death of the insured was caused ''directly, solely and independently of all other causes by external, violent and accidental means,'' and was not caused ''wholly or in part, directly or indirectly, by any disease, defect or infirmity,'' and because the jury affirmatively found that the deceased ''suffered an accidental wound to his finger, and that coincident with such accidental injury, the wound was inoculated or infected with septicemia, causing his death.'' See authorities previously cited. In the case of *Day v. Great Eastern Casualty Co.*, *supra*, we said:

"We think it is plain from the evidence that the bruise was the primary cause of death; it developed into a carbuncle and an infection which caused the death. We find no evidence to indicate that deceased was afflicted with diabetes prior to the injury, and there is no evidence to show that the symptoms of diabetes were not caused by the injury. It is more probable that the symptoms of diabetes were caused by the injury than that death resulted from diabetes or other disease."

In that case we adopted and quoted from the case of *White v. Standard Life & Acc. Ins. Co.*, 95 Minn. 77, 103 N. W. 735, 884, the following:

"The concensus of judicial opinion is that, subject to the exceptions contained in the policy, if the injury is the proximate cause of death the company is liable, but if an injury and an existing bodily disease or infirmity concur and cooperate to that end, no liability exists. If, however, the injury be the cause of the infirmity or disease—if the disease rests in and springs from the injury—the company is liable, though both cooperate in causing death."

But appellant strongly relies upon § 10 of the policy and claims that it is a limitation upon those portions of the policy which we have already quoted, and that, by virtue of such limitations, the respondent is entitled to recover only $120. Section 10 is denominated, "Special Provisions" and provides that,

"In the event of death . . . resulting from the following causes, the company's liability shall be one month's indemnity as provided in §§ 2 and 5 of this policy . . . injuries intentionally inflicted upon the insured by any other person; unnecessary exposure to danger, riot, strike or evading arrest; gas vapor or poison; contact with poisonous substances, *blood poisoning or septicemia* . . . or due partly to injury and partly to disease or bodily infirmity . . ."

It is our opinion that § 10 has reference solely to death resulting from the causes therein mentioned, including "blood poisoning or septicemia" and does not apply to an injury "caused directly, solely and independently of all other causes by external, violent and accidental means . . ." Here the death was the direct result of the injury to the insured's finger, and not the direct result of blood poisoning. If the insured's death had been the direct result of blood poisoning which was not in any wise connected with an injury caused by "external, violent and accidental means," then the contentions of the appellant would probably be correct. The quoted portion of § 10 has to do only with indemnity concerning loss of time, and is not consistent with the indemnity to be paid in the event of death directly resulting from external, violent and accidental means. To give § 10 the construction desired by the appellant would be in part to nullify § 1 of the policy; the construction which we have given it makes it harmonize with all the provisions of the policy.

The appellant strongly relies on the case of *Anderson v. Great Eastern Casualty Co.*, 51 Utah 78, 168 Pac. 966. It will be observed that the defendant in that case is the defendant in this. Most of the provisions of the policy involved there were in substance the same as the one involved here. In that case the assured accidentally injured her ankle and thereafter died of blood poisoning, the blood poisoning being the result of the injury. The court in substance adopted the contentions of appellant here, but based its decision upon a provision in the policy reading as follows: "Any loss resulting wholly or in part, directly or indirectly, from sunstroke, freezing, carbuncles, boils, felons, abcesses, ulcers, blood poisoning or septicemia

. . . shall be considered as resulting from sickness and covered only under § 5 of this policy, the original causes thereof notwithstanding.''

It will be noted that the provisions of that policy are very different, indeed, from the provisions of § 10 of this policy, because there it was expressly provided that loss from blood poisoning or septicemia, or any of the other ailments therein mentioned, should be considered ''as resulting from sickness and covered only under § 5 of this policy, the original cause thereof notwithstanding.'' There is no such provision in the policy in this case. Besides, that case was so decided by a bare majority of the court. While no cases have been cited to us, nor have we found any, where the policy contained the exact provisions found in § 10 of the policy involved here, the following cases are in point and controlling: *Berry v. United Comm. Trav. etc.*, 172 Iowa 429, 154 N. W. 598, L. R. A. 1916B 617, and note; *Thornton v. Travelers Ins. Co.*, 116 Ga. 121, 42 S. E. 287; *Travelers Ins. Co. v. Murray*, 16 Colo. 296, 26 Pac. 774, 25 Am. St. 267; *Garvey v. Phoenix Preferred Acc. Ins. Co., supra; Ballagh v. Interstate Business Men's Acc. Ass'n, supra; Schwinderman v. Great Eastern Cas. Co.*, 38 N. D. 584, 165 N. W. 982. In the case last cited, the policy provided that ''this insurance does not cover . . . loss from injuries fatal or otherwise, resulting wholly or in part, directly or indirectly from, or wholly or in consequence of . . . hernia . . .'' The plaintiff received a hernia as a result of a fall, and the hernia caused him loss of time. The defendant contended that, under the above quoted clause, plaintiff could not recover. The court said:

''It is not stated, and consequently cannot be assumed to have been meant, that the insurance was not

to cover an injury from which hernia resulted. In other words, under the language of the policy, where hernia is the cause, the insurance is not applicable, but where something else is the cause, and hernia is the result, the limitation does not apply.''

Appellant also seems to lay some stress upon that portion of the policy which provides insurance against bodily injury caused by external, violent and accidental means, ''and which shall from the date of the accident result in continuous disability.'' The policy evidently does not mean that there must be a disability from the very moment of injury, because in an injury of the character here involved, that would be impossible. But there was in this case a disability within the fair meaning and construction of the quoted words. The testimony shows that within twelve hours after the cutting of the finger the insured became sick, and that on the third day after his injury he took to his bed, which he never left.

It is our opinion that the judgment should be affirmed; it is so ordered.

PARKER, C. J., FULLERTON, and HOLCOMB, JJ., concur.