[No. 21660. Department One. August 27, 1929.]

DANIEL F. CARMICHAEL, *Respondent,* v. BENEFIT AS-
SOCIATION OF RAILWAY EMPLOYEES, *Appellant.*[1]

*Fred G. Clarke,* for appellant.
*Sather & Livesey,* for respondent.

MITCHELL, C. J.—This action was brought to recover upon an accident and illness income policy issued to the plaintiff, Daniel F. Carmichael, by the Benefit Association of Railway Employees. Upon trial of the case without a jury, findings and conclusions were entered in favor of the plaintiff, on which judgment was entered, from which the defendant has appealed.

[1]Reported in 280 Pac. 44.

The testimony shows, and the court found, that the respondent was engaged as a car repairer for the Northern Pacific Railway Company at Bellingham, and while thus engaged on December 27, 1925, the policy being in force at that time,

". . . he attempted to lift a heavy wedge into place upon an engine on which he was working, and while so doing, he fell, causing said wedge to fall toward and upon him and causing his head, neck, back and body generally to be thrown backward against a rod fastened between the rails of the track on which the engine was standing, and in such a manner that his limbs were caused to be spread out and in such a manner that he was injured, etc."

A monthly indemnity was paid by the appellant commencing as of the date of January 12, 1926, to and including the claim of September 12, 1926, for loss occasioned by the injuries. Monthly claims after September by the respondent not being paid, resulted in the commencement of this action.

Two defenses are presented to the action. The first one is that, because the respondent continued to work for the railway company as a car repairer until January 11, fifteen days after he was hurt, he does not come within the terms of the policy, which covers only injuries that "shall independently of any and all other causes, immediately, totally and continuously disable the insured." Counsel for the appellant admits in his brief that there is no question but that there is evidence in the case sufficient to support the finding that the respondent is permanently disabled. The court's finding in that respect is supported, in our opinion, by a very clear preponderance of the evidence, as is its other finding that such disability was caused by the accidental violent injuries to the respondent occurring on December 27, 1925.

More precisely, appellant's argument is that the disability did not occur sufficiently quickly after the accident to answer to the term "immediately" used in the policy. The case of *Laventhal v. Fidelity & Casualty Co. of New York*, 9 Cal. App. 275, 98 Pac. 1075, is cited and relied on by the appellant. That was a case in which the insured was injured while on a railroad train, by being bruised in the abdomen by coming in contact with a suit case. Thereafter he went to his place of business and attended to his duties for twenty days. The court said that the language of the policy was plain, and that any one could at once see that the plaintiff was not immediately disabled and prevented from performing the duties pertaining to his occupation.

Other cases relied on by the appellant are *Masonic Protective Ass'n v. Farrar*, 73 Ind. App. 19, 126 N. E. 435, where a locomotive engineer continued to fully perform his work for over three weeks after being injured; *Letherer v. United States Health & Accident Ins. Co.*, 145 Mich. 310, 108 N. W. 491, where the plaintiff, employed in running a cider mill, firing and running the engine and doing other work about the mill, continued to perform that same work for a week, and upon leaving that employer performed manual labor for others; and *Mullins v. Masonic Protective Ass'n*, 181 Mo. App. 394, 168 S. W. 843, where one was injured trying to get on a moving car, and in which the court said:

"He continued at his work several days. Then something appeared to affect him seriously; just what it was was a matter of uncertainty."

In this case, last cited, the court further said:

"The word 'immediate' should not be said to mean instantaneous, yet it has a meaning applied to time which limits that time, and several days labor at one's

usual avocation before total disability ensues is certainly beyond the limit.''

It is to be noticed that the court speaks of ''several days labor at one's usual avocation before total disability ensues.'' But let us see how these cases differ from the present one in essential particulars. Here the respondent, as he testified, was hurt on Sunday afternoon, and quit work that day very shortly after finishing that particular piece of work; that, from then on until January 11, when he quit work for good, he grew worse and could hardly step on his right leg; that he went down every day except two and tried to work, but could not do the kind of work he had been doing, and that the two days referred to he was compelled to remain in bed on account of his injuries; that, during the fifteen days, his head ached and his nose bled if he bent over, and that he could not lift anything.

His wife testified that the day he was hurt he came home and complained of his back and groin; he went to work every day except two, and on coming home would at once go to bed, where she would treat him by the application of hot water bags. The foreman of the shop or roundhouse, where the accident happened, testified that the respondent complained on the same day and shortly after having been hurt, and that from then on he grew worse, that while he came to work he was in pain and was given light work to do. On cross-examination, the foreman was asked, ''Was he able to work?'' to which he answered, ''Oh, no, not to perform his regular duties.'' None of this testimony was disputed or denied. Here the insured gave notice of his injury at once to the foreman. He was injured and grew gradually worse, being unable thereafter to perform all, or any, of his usual duties. The appellant

company was apprised of the accidental injuries and regularly and promptly made some eight monthly payments thereon according to the terms of the policy.

A great many cases upon this subject, written since the case of *Williams v. Preferred Mut. Acc. Ass'n,* 91 Ga. 698, 17 S. E. 982, refer to and approve that case. Indeed, it appears to be quite a leading case. It was cited and quoted in our recent case of *Lewis v. Preferred Accident Ins. Co. of New York,* 151 Wash. 83, 274 Pac. 1055. In the quotation from the Georgia case, it appears that court, in defining the word "immediately" as used in these policies, laid down the rule which we think is applicable to the particular facts in the present case, as follows:

"It would, perhaps, be going too far to say that in a policy like the present this word means precisely the same thing as 'instantly' or 'momentarily,' but it necessarily implies that the injury must be such that the insured cannot proceed regularly and in due course with his occupation; that he cannot go on with his work or business as if he had received no injury, and then, upon becoming worse, cease the transaction of his business or labor, and hold the company responsible for the loss of his time."

Here the insured did not proceed regularly and in due course with his occupation; he did not go on with his work as if he had received no injury, but promptly commenced to fail as a direct result of the injuries he received. The Lewis case also contains a quotation from *Rorabaugh v. Great Eastern Cas. Co.,* 117 Wash. 7, 200 Pac. 587, to the effect that a disability occurring within three days of the injury was within the fair meaning and construction of the words "from the date of the accident." In this connection, it may be stated that the words, "from the date of the accident," as defining or expressing a limitation of time, are construed with more certainty favorably to the insurer than the

word "immediately." *Lewis v. Preferred Accident Ins. Co. of New York, supra; Martin v. Travelers' Ins. Co.,* 310 Mo. 411, 276 S. W. 380. Still further it was said in the *Lewis* case:

"It is undoubtedly true that, if the bodily injury results substantially from the date of the accident, the requirement of the policy is satisfied."

See, also, to the same effect, 1. C. J., p. 468, § 178. That is what occurred in the present case, which in our opinion defeats the first defense set up by the appellant in this case.

█ The policy in suit provides:

"The association will not pay more than one class or kind of indemnity on account of any one accident, except as herein provided, or any illness indemnity during the time for which any accident indemnity is claimed or paid."

Whereupon the second defense is interposed that the respondent cannot prevail in his present claim for accident indemnity, because he accepted illness benefits under the policy. It is not claimed by the appellant, as we understand, that the respondent has either claimed or accepted both kinds of benefits for any given time, and in our opinion, the record in this case very clearly shows that he has never intended to claim, nor actually received, any illness benefits. It appears that application forms provided by the appellant for monthly accident indemnity were on white paper, while those for illness indemnity were on yellow paper. In this case, the first two reports were made out on the white sheets, the other six on the yellow ones; and while it is true that, in some of those upon the yellow sheets, there were statements which, considered alone, lend support to the contention that they were applications for illness indemnity, yet, upon the whole record and upon a consideration of all of the language in

each of said reports or applications, we are entirely satisfied, as was the trial court, that the appellant was in no way misled or prejudiced; that the respondent intended each and all of said applications and reports as applications for payment on account of the accident that he received on December 27. The respondent had reported the accident shortly after it happened, and made out two monthly claims accordingly for accident indemnity on forms for that purpose, and they were paid promptly. The other six claims or reports were made out on the yellow sheets, it is true, but they were the forms furnished to the respondent from month to month by the appellant. Those on the yellow sheets, as made out, were to some extent inartificially prepared, but, as already stated, considering all of the language in each, the history and nature of the sickness and the claims made by the respondent, it is plain that he was claiming accident indemnity only, and that payments, that were made, were made as such. That these were intended as claims arising in regular way from month to month out of the same accident, and that the appellant so understood it and made payments accordingly, we think cannot be seriously disputed.

Affirmed.

FULLERTON, HOLCOMB, TOLMAN, and BEALS, JJ., concur.