The **GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,** Plaintiff,

v.

Anthony F. **ROMA,** Joan B. **Roma,** Felix **Roma & Sons, Inc.,** Defendants.

No. 94–CV–0032.

United States District Court, N.D. New York.

Aug. 9, 1995.

444

Hinman, Howard & Kattell, Binghamton, NY, for plaintiff; James F. Lee, of counsel.

Levene, Gouldin & Thompson, Binghamton, NY, for defendants; John H. Hartman, of counsel.

## MEMORANDUM–DECISION & ORDER

HURD, United States Magistrate Judge.

Presently before the court are plaintiff's and defendants' motions for summary judgment, regarding claims arising from an alleged violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. Plaintiff's claim is for restitution and defendants counterclaim for benefits. Opposition to the motions was filed by the parties. Oral argument was heard on June 8, 1995.

### BACKGROUND

Plaintiff, The Guardian Life Insurance Company of America ("Guardian Life"), filed a complaint against defendants, Anthony F. Roma, Joan B. Roma and Felix Roma & Sons, Inc. ("Roma Inc."). The complaint set forth seven causes of action against Roma Inc., four causes of action against Joan B. Roma and two causes of action against Anthony F. Roma.[1] Guardian Life moves this

---

1. According to plaintiff: 1) Defendant, Roma Inc., breached its fiduciary duty causing plaintiff to pay out $7,216.07 in benefits, plus interest, for which plaintiff is entitled to restitution, (Am. Comp. ¶ 29) (see n. 4 for details regarding benefits); 2) Roma Inc., breached its fiduciary duty and plaintiff requests an order and judgment enjoining it from certifying in the future that Laurence A. Roma was an active full-time employee entitled to benefits, (Am.Comp. ¶ 33); 3) Roma Inc., committed fraud against plaintiff and plaintiff has been damaged in the amount of $7,216.07, plus interest, (Am.Comp. ¶ 41); 4) Roma Inc., was negligent in failing to engage in a reasonable inquiry and investigation to determine the employment status of the decedent and as a result plaintiff has been damaged in the sum of $7,216.07, plus interest, (Am.Comp. ¶ 48); 5) Roma Inc. breached its fiduciary duties regarding life insurance resulting in defendant Joan B. Roma receiving $100,910.00 to which she is not entitled. Plaintiff seeks restitution from either Joan B. Roma or Roma Inc., (Am.Comp. ¶ 59); 6) Defendants, Roma Inc., Joan B. Roma and Anthony F. Roma, committed fraud upon plaintiff damaging it in the amount of $100,910.00 plus interest since April 19, 1993, (Am.Comp. ¶ 70); 7) Roma Inc., Joan B. Roma and Anthony F. Roma, were negligent in failing to engage in a reasonable inquiry and investigation to determine the actual employment status and address of the decedent resulting in plaintiff's damages in the amount of $100.910.00, plus interest, (Am.

court to grant judgment solely on its first and fifth causes of action against Roma Inc., and on its first and fourth causes of action against Joan B. Roma. The remaining claims which plaintiff does not move this court to address are alternative claims which will not survive if the present motion is granted.

In its first cause of action against Roma Inc., plaintiff claims that the company breached its fiduciary duty through false certifications, causing Guardian Life to pay out $7,216.07 in benefits, plus interest, for which plaintiff is entitled to restitution.[2] (Am. Comp. ¶ 29.) In the fifth cause of action against Roma Inc. and the first cause of action against Joan B. Roma, plaintiff claims that Roma Inc. breached its fiduciary duty regarding a proof of death claim for life insurance proceeds and Joan B. Roma received $100,910.00 to which she was not entitled. Plaintiff seeks restitution from Joan B. Roma or Roma Inc. *Id.* at 59. In the fourth cause of action against Joan B. Roma, Guardian Life claims that it is entitled to repayment of the $100,910.00 in life insurance benefits which it mistakenly paid in reliance on defendants' false certifications. *Id.* at 82.

Defendants move the court for an order dismissing plaintiff's complaint and awarding judgment on the counterclaim to Joan B. Roma for the payment of further benefits under the Accidental Death and Dismemberment provisions of the Group Policy in the amount of $100,000.00.

### FACTS

Guardian Life is a mutual life insurance company incorporated in New York which has established an ERISA regulated group policy known as the "Food and Kindred Products Industry Insurance Trust Fund" for industry employers. The Group Policy provides major medical insurance, term life insurance, and accidental death and dismemberment coverage to employees of participating employers.

On September 17, 1984, Roma Inc. became a participating employer in plaintiff's Group Policy No. G218546 ("Group Policy"). Laurence A. Roma, now deceased, worked for the company in September 1984, and enrolled in the Group Policy.[3] Although the decedent stopped working for Roma Inc. in March of 1985, the company never notified plaintiff of the decedent's termination and continued to claim him as a full-time active employee. Roma Inc. continued to pay premiums and receive benefits, including medical expenses and basic life insurance, for the decedent under the Group Policy from March 1985 until his death in March of 1993.

From March 1985 until his death, the decedent worked and received wages from various businesses in California, Pennsylvania, and New York. Internal Revenue Service ("IRS") forms of the decedent and testimony of Anthony F. Roma, president of Roma Inc., and Patricia Grassi, office manager for Roma Inc., support the fact that the decedent was not employed by the company after March of 1985. Roma Inc. never submitted to Guardian Life the necessary "Change Reports" for the decedent, which should have reported his change of address and employment status.

Relying on the information supplied by defendant, Guardian Life continued to pay for medical expenses incurred by the decedent following the end of his employment in the amount of $7,216.07.[4] Relying on a proof of death claim form signed by Joan B. Roma as the claimant, plaintiff paid the decedent's life insurance proceeds to her in the amount of $100,910.00.

Comp. ¶ 78); and 8) Joan B. Roma, must repay the plaintiff the $100,910.00 which it mistakenly paid. (Am.Comp. ¶ 82.)

2. In its complaint, plaintiff originally alleged a loss of $7988.37, however, this sum was later found to be incorrect. *See* infra n. 4.

3. Laurence A. Roma was the son of Anthony F. Roma and Joan B. Roma.

4. This sum represents medical expenses paid by Guardian Life on behalf of the decedent to: New York State Office of Mental Health in 1987 for $5,410.67, Miscellaneous medical expenses for $902.70, Memorial Hospital in 1991 for $193.30, Park Avenue Associates in Radiology in 1991 for $83.50, York Hospital in 1992 for $223.90, Radiology Associates, P.C. in 1992 for $27.00 and York Orthopedic in 1992 for $375.00. (Canagata Aff. ¶ 11–21.)

## DISCUSSION

### A. Summary Judgment Standard.

■ Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

■ When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1356. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–249, 106 S.Ct. at 2510–2511; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. Thus, summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–1224 (2d Cir.1994) (citations omitted).

### B. ERISA Preemption.

Plaintiff contends that federal law preempts state law in this case, while defendants argue that state law applies. The statute of limitations provided in New York Law would bar portions of plaintiff's claims for reimbursement of medical insurance benefits. However, under federal law plaintiff's claims would not be time barred.

ERISA provisions "supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" described in the title. 29 U.S.C. § 1144(a). ERISA describes an "employee benefit plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries ... benefits in the event of sickness, accident, disability, death or unemployment." *Id.* § 1002(1).

■ The Group Policy created by Guardian Life with Roma Inc. comes under an ERISA regulated group policy known as the "Food and Kindred Products Industry Insurance Trust Fund" for industry employers. The Group Policy clearly represents an "employee benefit plan" because the plan provides major medical insurance, term life insurance, and accidental death and dismemberment coverage to employees of participating employers. Therefore, this case is governed by federal ERISA law.

■ Section 514(a) of ERISA broadly preempts state law causes of action that "relate to" an ERISA-regulated plan. *See,* e.g., *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900–2901, 77 L.Ed.2d 490 (1983). One factor pointing in favor of preemption is the "expectation[ ] that a federal common law of rights and obligations under ERISA-regulated plans would develop." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 280–281 (2d Cir.1992) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987)).

Defendants argue, citing *Bader v. Purdom*, that New York state law should apply be-

cause New York is the forum state. 841 F.2d 38 (2d Cir.1988). In *Bader*, New York residents brought an action against residents of Ontario, Canada, for injuries received by their child when she was bitten by a dog during a visit to Canada. *Id.* A thorough reading of *Bader* reveals that it has little in common with the case currently before the court. *Bader* involves a choice of law between countries regarding where the injury took place. Further, *Bader* does not involve a New York law overriding a federal statute of preemption.

According to the court in *Diduck*, the ERISA statute broadly preempts State law causes of action that "relate to an ERISA regulated plan." 974 F.2d at 280. Testimony of Anthony F. Roma verifies the fact that the Group Policy was implemented as an "employee benefit plan" within the purpose of ERISA. (Anthony F. Roma Dep. at 4.) Federal law preempts New York State law because the plaintiff's claim relates to a federally regulated benefit plan. *See Diduck*, 974 F.2d at 280.

The statute of limitations provided under ERISA allows for six years after the date of discovery of such breach or violation before a claim is barred. 29 U.S.C. § 1113. Because ERISA preempts state law, it follows that none of the claims for which summary judgment is sought are time-barred.

## C. *Breach of Fiduciary Duties and Restitution.*

Guardian Life claims Roma Inc. breached its fiduciary duties by providing false information on medical and life insurance claim forms. This breach caused plaintiff to make payments on behalf of the decedent for $7,216.07 in medical expenses[5] and $100,-910.00 in life insurance proceeds. Guardian Life requests an order granting restitution from Roma Inc. or Joan B. Roma.

Under ERISA, in addition to persons named as fiduciaries by a benefit plan, anyone who exercises discretionary control or authority over the plan's management, administration, or assets is an ERISA "fiduciary." 29 U.S.C. § 1002(21)(A). Fiduciaries

are assigned a number of detailed duties and responsibilities which include, "the proper management, administration and investment of [plan] assets, the maintenance of proper records, the disclosure of proper information, and the avoidance of conflict of interest." *Mertens v. Hewitt Assocs.*, —— U.S. ——, ——, 113 S.Ct. 2063, 2067, 124 L.Ed.2d 161 (1993) (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142–143, 105 S.Ct. 3085, 3090–3091, 87 L.Ed.2d 96 (1985)); *see* 29 U.S.C. § 1104(a)). Fiduciaries must discharge their duties "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

If a fiduciary fails to fulfill the requirements of its duties, specific remedies are available against it. 29 U.S.C. § 1109(a). The fiduciary is liable for:

> [D]amages (to make good to [the] plan any losses to the plan resulting from each such breach), for restitution (to restore to [the] plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary) and for such other equitable or remedial relief as the court may deem appropriate.

*Mertens*, —— U.S. at ——, 113 S.Ct. at 2066 (internal quotations and citations omitted). A fiduciary who breaches any of these responsibilities, obligations, or duties shall be held personally liable. 29 U.S.C. § 1109(a).

Because this claim is governed by the ERISA statute, statutorily enforced fiduciary duties and remedies are applicable. In this case, Roma Inc. exercises discretionary control or authority over the plan's management, administration, or assets, and is therefore an ERISA "fiduciary." *See* 29 U.S.C. § 1002(21)(A). Roma Inc. is responsible for properly managing the plan policy and disclosing information to its fiduciary, Guardian Life. *See* 29 U.S.C. § 1104(a)). In a fiduciary relationship the submission of false information by one of the parties results in a

---

**5.** See *supra* n. 2 for explanation of claim amounts.

breach of those fiduciary duties and the breaching party is responsible for damages.

■ Further, regarding non-fiduciaries, ERISA provides for the damaged party to bring a civil action to obtain "other appropriate equitable relief" to address violations of the terms of a plan. 29 U.S.C. § 1132(a)(2). The Court in *Mertens* recognized restitution as an appropriate equitable form of relief. —— U.S. at ——, 113 S.Ct. at 2069. In order "to be entitled to restitution a party must show not only that there was unjust enrichment, but also that the person to be charged had wrongfully secured a benefit, or had passively received one which it would be unconscionable for him to retain." *Geller v. County Line Auto Sales, Inc.*, No. CV–94–3123, 1995 WL 313123, at *4, 1995 U.S.Dist. LEXIS 8629, at *10 (E.D.N.Y. May 17, 1995) (citing 22 N.Y.Jur.2d Contracts § 449.); *see also Blue Cross & Blue Shield of Alabama v. Weitz*, 913 F.2d 1544, 1548 (11th Cir.1990) (holding that "suits by fiduciaries against third parties wrongfully in receipt of payments preserves the integrity ERISA-governed funds ... [and] is consonant with the general goals of ERISA.") Thus, both Roma Inc. and Joan B. Roma could be required to make restitution if plaintiff proves that Roma Inc. breached its fiduciary duty.

### 1. *Full-time Active Employee.*

■ In this case, the Group Policy issued to Roma Inc. was comprised of an Employer Rider and Master Group Policy. In order to be eligible for benefits under the terms of the Group Policy, an employee of Roma Inc. was required to be an "active, full-time employee." The policy defines a full-time active employee as an "employee who regularly works at least the number of hours in a normal work week set by his employer at his employer's place of business." (Employer Rider at 2.) Coverage for an employee under the terms of the Group Policy ends on the date that the employee's active full-time service ends for any reason including disability, death, layoff, leave of absence retirement, and end of employment. *Id.* at 6.

The facts of this case clearly show that the decedent had not been an active full-time employee of Roma Inc. since 1985. IRS forms of the decedent show that he was employed elsewhere during the time he was reported as an employee of Roma Inc. Anthony F. Roma testified that the decedent was employed elsewhere after March 1985. (Anthony F. Roma Dep. at 38.)

Patricia Grassi is the employee responsible for administering the Group Policy medical claim forms. (Grassi Dep. at 5–6.) She testified that she signed the certification that the decedent was a full-time active employee, while knowing that he had not worked for the company since March 1985. *Id.* at 15–16. Further, Anthony F. Roma himself testified that the decedent was no longer working for the company when claim forms were submitted. (Anthony F. Roma Dep. at 17.)

As designated beneficiary of the decedent's basic life insurance benefits, Joan B. Roma signed a proof of death claim form as the claimant. Although the claim form indicated that the decedent's address was 1808 Witherill Street, Endicott, New York, she admitted that the decedent was not in fact living at that address. (Joan Roma Dep. at 6.) Joan B. Roma testified that the decedent was living in an apartment in York, Pennsylvania at the time of his death, and was not visiting Pennsylvania on vacation as she stated on the proof of death claim. *Id.* at 8–9.

Contrary to the statements set forth in the proof of death claim, at the time of his death the decedent did not have an occupation as an office manager. (Anthony F. Roma Dep. at 44–46.) The decedent did not receive an annual salary of $35,000, and he was not working full-time at Roma Inc. *Id.* In fact, the decedent was not working anywhere as an office manager at an annual salary of $35,000. *Id.* Rather, IRS documentation shows that the last place the decedent was employed was "The Olive Garden" restaurant in York, Pennsylvania in 1992.

■ The court does not accept the argument that the decedent was eligible as an active full-time employee for benefits after his termination in 1985. It is clear and undisputed that the decedent was not employed by Roma Inc. after 1985. It is also clear and undisputed that false information regarding the decedent's address and employment sta-

tus were submitted to plaintiff on medical claim forms and the proof of death claim. The submission of false information by Roma Inc. was a breach of its fiduciary duty. Joan B. Roma was unjustly enriched at the expense of Guardian Life, when she wrongfully received the life insurance proceeds. It would be unconscionable for her to retain these proceeds because she knowingly made misrepresentations to the insurance company in order to obtain benefits from the decedent's policy. *See Geller,* 1995 WL 313123, at *3 1995 U.S.Dist. LEXIS 8629, at *10. The only way that the decedent could be considered eligible for benefits would be if he were disabled.

### 2. *Disability.*

Under the terms of the Employer Rider issued to Roma Inc., along with the Master Group Policy, an employee's insurance under the Group Policy could be continued if two requirements were met. First, the employee's active full-time service must come to an end "because he is disabled." (Employer Rider at 6.) Second, the continuance of the employee's benefits under the Group Policy must be based upon a "plan which prevents individual selection" by the employer regarding which terminated, disabled employees will have coverage continued by payment of premiums. *Id.*

In its defense, Roma Inc. argues that it did not breach its fiduciary duty because the decedent was disabled. Without factual support, defendants claim that the decedent's alternative employment was part of a rehabilitation program to enable him to return to Roma Inc. for employment. It does not believe that it misrepresented any facts, because according to defendants, the Endicott address was the most permanent address available for the decedent.

According to Roma Inc., plaintiff's forms were not properly designed to fit the disabili-

ty provisions of the Employer Rider. Because the Group Policy contained no definition of disability, required no proof or notice of disability, and the duration of disability coverage was not limited, Roma Inc. argues that the policy granted it the discretion to select which employees were disabled and which it could continue paying premiums for.

■ In order to continue coverage under the Employer Rider, the first requirement to be met is that the employee's active, full-time service ends "because he is disabled." Disability is defined as the "absence of competent physical, intellectual or moral powers; impairment of earning capacity; loss of physical function that reduces efficiency; inability to work." Blacks Law Dictionary 461 (6th ed. 1990) (citing *Rorabaugh v. Great Eastern Casualty Co.,* 117 Wash. 7, 200 P. 587, 590 (1921)).

According to IRS documentation, the decedent was employed at various other businesses around the country for reasonable wages during the time Roma Inc. claims he was disabled. It would be difficult for this court to conclude that the decedent was disabled for eight years during which IRS records show that he was employed.[6] The decedent clearly was able to work. He was capable of supporting himself living away from home and earned sufficient wages as an employee of other businesses. It is clear from the undisputed evidence that the decedent was not experiencing any absence of competent physical, intellectual or moral powers, nor was he unable to work.

Furthermore, "change reports" which were used to update Guardian Life with regard to the changing addresses and employment status of the insured were not submitted for the decedent. Ms. Grassi testified that she used change reports to advise the insurance company of the termination and change of address of other employees. (Grassi Dep. at 8.)

6. Between March 1985 and his death in March 1993, the decedent was employed at: "A. Giuralani & Bros." earning $4778.95, "Sacred Heart Jesuit Center" earning $655.00, "Grand Union Company" earning $6,318.76, "Business Services by Manpower, Inc." earning $9,385.60, "Chef–Italia Inc." earning $714.00. "Pepina, Inc." earning $465.50, "Romolo's Restaurant," earning $16,983.52, "Drover's Inn" earning $1,125.63, "New York Enterprises, Inc." earning $2,562.76, "Pizza Palace Restaurant" earning $2,781.16, and "Red Lobster" earning $9,189.00. (*See* Stipulation regarding admissibility of IRS records attached to opposing affidavit of James F. Lee, Esq. as Exhibit "A".)

It was only on this occasion that she failed to update plaintiff regarding the correct address and employment status of an employee.

Defendant failed to meet the first requirement for continued coverage of the decedent under the Employer Rider. Defendant's definition of "disabled" is untenable since defendant would then be able to continue coverage for any employee who stopped working for any reason. It does not appear that the decedent received any treatment for his alleged disability until more than a year after he stopped working for the defendant. Anthony F. Roma never received any written documentation from any of the people who treated the decedent opining that he was unable to work. (Anthony F. Roma Dep. at 50.)

■ The second requirement for extended disability coverage under the Employer Rider is a written employee welfare benefit plan which prevents individual selection of who can receive continued coverage. The testimony of Anthony F. Roma clarifies the fact that Roma Inc. does not have a written summary plan description for its employee welfare plan. (Anthony F. Roma Dep. at 4.) The only documents which it provides to its employees describing the benefits are the documents provided by plaintiff. *Id.* at 4–7.

Roma Inc. argues that although it does not have a "plan," it does have a "custom" of continuing coverage for other disabled employees. The company claims that it established a plan through a history of disability coverage which should satisfy the requirement. The three other employees for whom premiums were paid by the company were totally disabled as required by section one of the Employer Rider. Further, none of the other employees worked for wages in any other job before returning to work for Roma Inc.

The court finds that Roma Inc. has failed to meet the second requirement for continued coverage established in the Employer Rider. The company made the decision, without guidelines, to continue paying premiums for the decedent and three other disabled employees. There was nothing to compel it to continue insurance coverage to other disabled employees. Roma Inc. did not have an employee welfare benefit plan which would have prevented individual selection of employees who would receive continued coverage. Further, a "custom" is not equivalent to a plan preventing individual selection by an employer, and Anthony F. Roma testified that Roma Inc. had no plan to satisfy the second requirement for disability coverage. Therefore, the decedent's eligibility for insurance coverage under the Group Policy terminated when he left the employment of defendant in March 1985.

### CONCLUSION

Plaintiff has met its burden of showing that no genuine issue of material fact remains as to Roma Inc.'s breach of its fiduciary duty. Under ERISA, federal law preempts state law in this case and the statute of limitations is six years. *See* 29 U.S.C. § 1144(a). ERISA provides for restitution from Roma Inc. as a fiduciary and from Joan B. Roma as appropriate equitable relief. 29 U.S.C. § 1132(a)(2). This court will not address plaintiff's forth cause of action against Joan B. Roma because Guardian Life has already been awarded remedy in its first cause of action against her. Reasonable minds can only conclude that Roma Inc.'s submission of false information breached the fiduciary duty imposed by ERISA, and that plaintiff is entitled to restitution from Joan B. Roma and Roma Inc.

Accordingly, it is

ORDERED, that:

1. Plaintiffs' motion for summary judgment is GRANTED with regard to its first cause of action against defendant, Felix Roma & Son's, Inc., in the sum of seven thousand two hundred sixteen dollars and seven cents ($7,216.07) plus interest from the dates of payment by plaintiff;

2. Plaintiff's motion for summary judgment is GRANTED with regard to its fifth cause of action against defendant, Felix Roma & Sons, Inc., and on its first cause of action against defendant, Joan B. Roma, for the sum of one hundred thousand nine hundred ten dollars ($100,910.00) plus interest from April 19, 1993;

3. Defendants' motions for summary judgment are DENIED;

4. Plaintiff's motion for summary judgment to dismiss counterclaim is GRANTED upon the merits; and

5. Plaintiff's remaining claims in its amended complaint against Anthony F. Roma, Felix Roma & Sons, Inc., and Joan B. Roma are DISMISSED as moot.

Plaintiffs shall submit a proposed judgment within ten (10) days of the filing of this order.